# SANDERSON *v.* UNITED STATES AND THE CHEYENNE INDIANS.

## APPEAL FROM THE COURT OF CLAIMS.

No. 208.　Argued April 22, 23, 1908.—Decided May 18, 1908.

The provisions of § 1088, Rev. Stat., relative to new trials in Court of Claims cases are applicable to cases brought under the Indian Depredations Act of March 3, 1891, 26 Stat. 851.

The motion for new trial on behalf of the United States in Court of Claims cases under the provisions of § 1088, Rev. Stat., may be made any time within two years after final disposition of the claim, and, if so made, the motion may be decided by the court after the expiration of the two years period.

While ordinarily a court has no power to grant a new trial after the adjournment of the term if no application was made previous to the adjournment, the power so to do can be given by statute, and where a government consents to be sued, as the United States has in the Court

of Claims, it may attach whatever conditions it sees fit to the consent and give to itself distinct advantages, such as right to apply for new trial after the term, although such right is not given to claimants.

ON the eighth of June, 1891, the appellant herein filed his petition in the Court of Claims, under the Indian Depredations Act, approved March 3, 1891, c. 538, 26 Stat. 851, to recover for losses of property sustained by the firm, of which, at the time of filing the petition, he was the surviving partner, from the depredations committed by members of a tribe of Cheyenne Indians in the year 1867, in or near the State of Kansas.

The petition contained the averments that the firm was at the time of the depredations engaged in the business of operating the Southern Overland Mail and Express Route, between the then terminus of the Union Pacific Railway and the city of Santa Fé, New Mexico, and was carrying the mails of the United States between those points.

Subsequently to such depredations two of the members of the firm died, and at the time of the filing of the petition the petitioner was left as the sole surviving partner.

The depredations were committed by taking unlawfully and by force or stealth from the possession of the firm, and in or near the State of Kansas, some thirty-seven mules and six horses, used by the firm in the operation of its business.

Under certain acts of Congress of March 3, 1885, c. 341, 23 Stat. 362, 376, and May 15, 1886, c. 333, 24 Stat. 29, 44, the claim of the firm for the recovery of the losses thus sustained was submitted to the investigation of the Secretary of the Interior, and, after investigation, the Secretary reported to Congress on December 7, 1886, finding that the firm had a just and equitable claim upon the United States for the amount of $7,740, the value of the animals as ascertained by the Secretary, who recommended the payment of that sum. Congress never appropriated anything for the payment of any part of the sum recommended. The amount awarded was not as large as the firm claimed was the value of the property de-

stroyed, but, for reasons stated in the petition to the court, it was not attempted to correct the injustice by reopening the question of the value upon the trial of the case before the Court of Claims.

The petition also contained an allegation that the tribe to which the Indians belonged who committed the depredations was at the time the loss occurred in amity with the United States.

After the filing of the petition the parties agreed on the facts, and, among others, it was agreed that the Indians took and destroyed the property belonging to the claimant without just cause or provocation, and that the Indians who took the property were members of the Cheyenne tribe, which was at the time of the commission of the depredations in amity and treaty relations with the United States.

The case was submitted to the court on the thirtieth day of June, 1892, and on the eleventh day of October, 1892, judgment was entered in favor of the claimant for the sum of $7,740, being the amount which had theretofore been reported to Congress by the Secretary of the Interior.

On the sixth day of October, 1894, the Assistant Attorney General filed in the clerk's office of the Court of Claims, while the court was in recess, a motion for a new trial in accordance with the provisions of § 1088 of the Revised Statutes of the United States, the ground of such motion being that in awarding judgment in favor of the claimant wrong and injustice had been done to the United States, because the defendant, the Cheyenne Indians, were not in amity with the United States at the time of the depredations which form the basis of the suit.

The Court of Claims on the thirteenth day of April, 1896, granted the motion for a new trial, and upon the new trial which was thereafter had the court found as a fact that at the time of the several depredations alleged in the petition the defendant Indians were hostile, and, as a conclusion of law, the court decided that the petition should be and the same

was dismissed, and judgment upon such finding and conclusion was entered in the court on the twenty-third day of April, 1906.

The claimant, on the seventeenth day of September, 1906, moved to vacate the judgment entered upon the new trial, and asked that the original judgment entered on the eleventh of October, 1892, should be reinstated and affirmed. The motion was denied, and on the twenty-fourth day of December, 1906, the claimant appealed to this court.

*Mr. Jackson H. Ralston* and *Mr. William E. Richardson,* with whom *Mr. Frederick L. Siddons* was on the brief, for appellant:

The Court of Claims had no power, under § 1088 of the Revised Statutes of the United States, to vacate a judgment by granting a motion for new trial four years after the judgment was entered.

The Supreme Court will review this issue on appeal from final judgment after the motion for new trial has been granted as it is only by means of such appeal that this court can act. *Young, Trustee,* v. *United States,* 94 U. S. (4 Otto) 258, and 95 U. S. (5 Otto) 641.

The Court of Claims made an erroneous ruling in the *Bellocq case,* 13 C. Cls. 195, which it relies upon to sustain the granting of the new trial in this case. The theory upon which the *Bellocq case* proceeded, namely, that in the absence of an express statutory prohibition, the Court of Claims may grant a motion for a new trial at any time, and that the statute in question, because it employs the term "may grant" within two years, does not forbid the granting of the motion after that period, was directly refuted by the opinion of this court in *Belknap* v. *United States,* 150 U. S. 588.

By the rule of the common law the trial court was required to dispose of the motion during the term. *Belknap* v. *United States,* 150 U. S. 588; *Buckner* v. *Conly,* 17 Ky. (1 T. B. M.) 3; *Truett* v. *Legg,* 32 Maryland, 149.

By examination of the judicial systems of many States, it is found that although the majority merely require the motion for new trial to be presented within a limited time, a large number have not fixed any time for the filing of the motion, but have statutes similar to the one under consideration, determining the period within which the court may grant a new trial.

The identical question raised here was decided in favor of appellants' contention in *Vaughan* v. *O'Connor*, 12 Nebraska, 478.

The principal other decisions in the several States having similar statutes upon this subject either requiring the motion to be determined within a fixed number of days, or within the term, or within the next succeeding term after judgment, all of which support the claimant's contention in this case, are as follows: *Ex parte Highland Avenue & Belt R. Co.*, 105 Alabama, 221; *Hundley* v. *Yonge*, 69 Alabama, 89; *Fitzpatrick's Admr.* v. *Hill*, 9 Alabama, 783; *Ruff* v. *Hand* (Arizona, 1890), 24 Pac. Rep. 257; *Walker* v. *Jefferson*, 5 Arkansas, 23; *Redman* v. *Reynolds*, 114 Indiana, 148; *Crews* v. *Ross*, 44 Indiana, 481 (487); *Hays* v. *May*, 35 Indiana, 427; *Ferger* v. *Wesler*, 35 Indiana, 53; *Buckner* v. *Conly*, 17 Kentucky, 3; *England* v. *Duckworth*, 75 S. Car. 309; *Clements* v. *Buckner* (Texas, 1904), 80 S. W. Rep. 235; *Lightfoot* v. *Wilson*, 11 Tex. Civ. App. 151; *S. C.*, 32 S. W. Rep. 331; *Laird* v. *State*, 15 Texas, 317; *McKean* v. *Zillner*, 9 Texas, 58.

It cannot be said that the appellant waived any rights by proceeding to trial after the granting of the motion for new trial. There was no right of appeal from the order, and it was his duty to participate in the new trial, and bring up this question on appeal from final judgment. *United States* v. *Young*, 94 U. S. 258.

*Mr. Assistant Attorney General John G. Thompson*, with whom *Mr. Lincoln B. Smith*, Assistant Attorney, was on the brief, for appellees.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The sole question in this case arises from the action of the Court of Claims in granting, upon the application of the Government, a new trial, April 13, 1896, more than two years subsequent to the entry of judgment in favor of the claimant on the eleventh day of October, 1892, although the application for such new trial had been filed October 6, 1894, which was less than two years after the entry of that judgment. The order was made under § 1088 of the Revised Statutes of the United States, which reads as follows:

"SEC. 1088. The Court of Claims, at any time while any claim is pending before it, or on appeal from it, or within two years next after the final disposition of such claim, may, on motion on behalf of the United States, grant a new trial and stay the payment of any judgment therein, upon such evidence, cumulative or otherwise, as shall satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States; but until an order is made staying the payment of a judgment, the same shall be payable and paid as now provided by law."

The motion was made pursuant to instructions contained in the act of Congress, approved August 23, 1894, c. 307, 28 Stat. 424, 476, which made appropriations to pay the judgments of the Court of Claims in this case, and 258 other Indian depredation cases. The provision in the last part of § 1 of that act is as follows:

"That no one of the said judgments shall be paid until the Attorney General shall have certified to the Secretary of the Treasury that he has caused to be examined the evidence heretofore presented to the Court of Claims in support of said judgment and such other pertinent evidence as he shall be able to procure as to whether fraud, wrong, or injustice has been done to the United States, or whether exorbitant sums have been allowed, and finds upon such evidence no grounds

sufficient in his opinion to support a new trial of said case; or until there shall have been filed with said Secretary a duly certified transcript of the proceedings of the Court of Claims denying the motion made by the Attorney General for a new trial in any one of said judgments."

The Attorney General examined the evidence therefore presented to the Court of Claims, and filed a motion for a new trial in this and many other cases. The motions in this case, and the others, were filed within two years from the dates of the respective judgments, but it is admitted that none of them was acted upon by the Court of Claims within that period. The Court of Claims was not in session when the statute of August 20, 1894, was passed nor when the motions for a new trial were filed in the clerk's office of that court, and it did not convene after the summer vacation until October 22, at which date more than two years had elapsed since the rendition of the judgment in this case.

It has been held by the Court of Claims (and, as we think, correctly) that § 1088 is applicable to the Indian Depredations Act of 1891 (26 Stat. 851). *McCollum* v. *United States*, 33 C. Cl. 469, 472.

The appellant contends that the statute must be so construed as to require the decision of the motion for a new trial within two years after the final disposition of the case, and hence that the motion should have been not only filed in the clerk's office, but decided by the court on or before October 11, 1894. The Government contends that as the motion was filed within the two years subsequent to the entry of the judgment, the court obtained jurisdiction over the motion, and it might be decided after the expiration of the two years. Upon the theory of the appellant the accident of an adjournment of the court some months *before* and its failure again to meet until a few days *after* the expiration of the two years subsequent to the entry of the judgment, deprived the court of the jurisdiction to hear and decide the question of the application for a new trial, although such application was

filed in its clerk's office within the two years limited by the statute.

Ordinarily a court has no power to grant a new trial after the adjournment of the term if no application has been made previous to the adjournment and no continuance granted. *Belknap* v. *United States,* 150 U. S. 588. This act, however, is a peculiar one. It grants distinct advantages to the United States. *United States* v. *Ayres,* 9 Wall. 608; *Henry* v. *United States,* 15 Ct. Cl. 162. These advantages Congress was competent to grant. The Government consents to be sued in regard to claims of this nature, and may attach such conditions to its consent as to it may seem proper. Among other conditions as to the finality of the judgments of the court it has empowered such court to grant a new trial on motion of the United States, pursuant to the section named.

The facts agreed upon on the first trial did not prevent the court from granting a new trial under that section. Indeed, the act of 1894, *supra,* really directs the court to grant a new trial if the facts are sufficient to bring the case within the provisions of § 1088.

We think the motion for a new trial may be made or filed at any time within the two years as provided for, and it is not necessary that the court should decide the motion within that time. If the Government has the whole two years in which to apply (and there is certainly nothing in the statute which limits the time to less than two years) it could not reasonably be held that an application made near the end of the two years must, nevertheless, be decided within that time. The motion might be filed at the last moment before the expiration of the two years, and if so, the court should have time to thereafter act upon it, or else the two-year limitation in which to file the motion is practically denied. If the motion must be decided within the two years, it must, of course, be filed sufficiently long before the expiration of that period to allow the court what it may regard as a sufficient time to decide it

intelligently within the limitation. How long that time may be it is impossible to say. It would be for the court to determine in each case. The result of such a construction is that there is no certain and definite time within which the motion for a new trial must be made, but it must be long enough before the expiration of the two years to give the court the time it may require in which to act upon the motion. This uncertainty we do not think was intended, nor is it the proper construction of the statute. When it limits the time to two years it is a limitation of the time for filing the motion and not a limitation of the time for making a decision, if the motion has been filed within the two years.

There is not much assistance to be obtained by referring to decisions of the state courts in relation to statutes of a somewhat similar nature, applicable to the ordinary law courts of the State. They depend very much upon the special language of the various statutes, all of which differ somewhat from the one under discussion. In addition to that, however, the peculiar nature of the Court of Claims itself must be considered. Congress created it for the sole purpose of permitting certain classes of claims against the Government to be presented to and passed upon by it, under the conditions which Congress might from time to time prescribe. The statute must therefore be so construed as to give full effect to such various conditions which Congress imposes upon the claimant for the privileges accorded him. A right on the part of the United States to move for a new trial should be so construed as not to limit the right by any technical or narrow reasoning, but the whole two years should be allowed in which to make the motion. Some States have enacted statutes limiting the time within which applications of this nature may be made, and they have been held complied with if the application is made within the time limited, although the decision is made subsequently. In other States the courts have regarded the time limitation as applicable to the time when the decision of the question submitted is rendered. We do not regard it as nec

essary to cite them. The statutes differ, and the reasoning of the courts also.

The question of the construction of this particular act has heretofore been before the Court of Claims in *Bellocq* v. *United States*, 13 C. Cl. 195. The court there held that the limitation referred to the time of making the motion, and not to the time of its decision. We think the reasoning of Chief Justice Drake in that case is sound. See, also, *Mitchell* v. *Overman*, 103 U. S. 62; *McCollum* v. *United States*, 33 C. Cl. 469. Having two years in which to file its motion for a new trial the Government was in time in this case when it filed its motion with the clerk of the court, the court itself being then in recess, and it could thereafter hear and decide the case at its convenience.

The judgment of the Court of Claims dismissing the petition is

*Affirmed.*